IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **HEALTH OPTION ONE, LLC, a** <br> **Florida limited liability company,** | |
| **Plaintiff,** | **Civil Action No.** |
| **v.** | |
| **FIRST ENROLL, LLC, a New** <br> **Jersey limited liability company,** <br> **INFINIX MEDIA, LLC, a Florida** <br> **limited liability company, KRATOS** <br> **INVESTMENTS, LLC, a Florida** <br> **limited liability company,** <br> **BEEMAN'S FUTURE, INC., a** <br> **Florida corporation, and RM7** <br> **SERVICES, LLC, a Florida limited** <br> **liability company,** | |
| | **DEMAND FOR JURY TRIAL** |
| **Defendants.** | |

## <u>COMPLAINT</u>

Plaintiff Health Option One, LLC ("HOO"), doing business as Insurance Care Direct ("ICD"), through the claims alleged herein, sues defendants First Enroll, LLC ("First Enroll"), Infinix Media, LLC, ("Infinix"), Kratos Investments, LLC ("Kratos"), Beeman's Future, Inc. ("Beeman's Future") and RM7 Services, LLC ("RM7 Services")(collectively, "Defendants").  In support of its claims, ICD states as follows:

1

## NATURE OF THE CASE

1.      This case seeks to enjoin, and recover damages from, an elaborate multi-state scheme perpetrated by the Defendants through which Defendants market and/or sell, directly or indirectly, unauthorized and/or illegal "tribal" association-based health plans to unwitting consumers in New Jersey and at least eleven (11) other jurisdictions, all with the intent of circumventing the purview of state law and regulation.  The potentially impacted jurisdictions include New Jersey, New York, Massachusetts, Rhode Island, Vermont, New Hampshire, Maine, Utah, Oregon, Colorado, Alaska, as well as the District of Columbia.[1]

2.      The core tenet of Defendants' scheme rests upon the multi-state marketing and/or sale of health "insurance" products offered to <u>all consumers</u> through "Sovereign Nations Insurance," a tribally-chartered "entity" based in Utah which, according to its own website ([www.sniprotect.com](www.sniprotect.com)), purports to engage "in interstate and inter-Tribal commerce, **both on and off Reservation**, with members of Tribal Health Communities (THC) established by sovereign Tribal law." (Emphasis added).  Sovereign Nations Insurance claims to be "a limited liability company established under the Shivwits Band of Paiutes Limited Liability Company Act."  Again, according to its own website, "SNI provides health care and insurance

---

[1] Upon information and belief, Defendants are targeting these particular jurisdictions as a result of applicable statutory and/or regulatory restrictions on the sale of association-based health products.

benefit solutions throughout the United States to all members of Tribal Health Communities, **both Native American and non-Indians alike**." (Emphasis added).

3.      Upon information and belief, Sovereign Nations Insurance is operating, and Defendants are engaged in marketing, soliciting and/or selling Sovereign Nations Insurance's unregulated products, wholly outside of the jurisdiction of state regulators in New Jersey and any other affected state jurisdiction, to the detriment not only of lawful actors such as ICD and others, but even more importantly, to the detriment of millions of potential consumers, all of whom rely upon the safeguards achieved through state-based regulation of insurance and similar products. The marketing and/or sale of unauthorized and/or illegal products offered through Sovereign Nations Insurance also expressly contravenes the *McCarran-Ferguson Act* (15 U.S.C. §§1011 *et seq.*), through which Congress expressly delegated the regulation of insurance to the states.

4.      Through this unauthorized and/or illegal scheme, upon information and belief, Defendants are profiting to the tune of millions of dollars at the expense not only of competitors such as ICD but, more importantly, the general public. The scheme is nothing short of a bald-faced attempt to reap illegal profits by circumventing the regulation of insurance by the states. It must be stopped.

## THE PARTIES

5.      Plaintiff HOO is a Florida limited liability company with its principal place of business in Deerfield Beach, Florida.

6.      Defendant First Enroll is a New Jersey limited liability company that does business in Tinton Falls and operates throughout the United States.

7.      Defendant Infinix is a Florida limited liability company with its principal place of business in Fort Lauderdale, Florida.

8.      Defendant Kratos is a Florida limited liability company with its principal place of business in Miami, Florida.

9.      Defendant Beeman's Future is a Florida corporation headquartered in Fort Lauderdale, Florida.   Beeman's Future is owned and controlled by Adam Beeman.

10.      Defendant RM7 Services, LLC, is a Florida limited liability company with its principal place of business in Fort Lauderdale, Florida.

## JURISDICTION AND VENUE

11.      This action arises under 15 U.S.C. § 1125(a) (the "Lanham Act") and New Jersey common law of unfair competition.  This Court accordingly has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1367.

12.      This Court has personal jurisdiction over the Defendants because each defendant purposefully availed itself of conducting business in the state of New

Jersey and purposefully directed its commercial efforts towards New Jersey consumers.

13.     Venue is proper pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

**FACTUAL ALLEGATIONS**
**ICD'S PLANS**

14.     ICD is a family-owned business established in 2001 which has grown into one of the nation's largest health and life insurance agencies.

15.     Among other things, ICD offers benefit plans and tailored memberships that include health benefits, products and services ("ICD Plans") to individuals.  The ICD Plans include insurance underwritten by a diverse group of benefit companies and insurance carriers.

16.     Individuals become insureds under the ICD Plans by becoming members of the association or other group to which a master group insurance policy has been issued by the insurance carrier.  Association membership provides access to benefit services.

17.     At all times, ICD markets and sells its ICD Plans to consumers in accordance with applicable state and federal laws and regulations.

### DEFENDANTS' UNAUTHORIZED AND/OR ILLEGAL SCHEME

18.    Defendants' scheme works like this:  Defendant RM7 Services is a "lead generation" company that seeks to identify prospective consumers of health insurance plans and, possibly, other health plan products.  For example, a consumer in New Jersey may visit Google.com or similar search engine and type in the words "Blue Cross Blue Shield."



19.    Upon typing "Blue Cross Blue Shield" into the search engine, a consumer will be presented with a list available website "hits," such as the following:[2]

---

[2] This particular screenshot shows the website "hits" for a consumer in New Jersey typing in the search words "Blue Cross Blue Shield" in May 2022 immediately preceding the following of this Complaint.



20.     Clicking on one of the first sites on the above screenshot, www.new-jersey-healthplans.com/blue-cross/blue-shield, the consumer is directed to the following webpage operated by defendant RM7 Services:



21.    The consumer is then directed to another webpage operated by defendant RM7 Services in which the consumer's personal information is requested and, if the consumer so chooses, input:



22.    Upon obtaining the contact information for the prospective consumer, RM7 Services sells or transfers the consumer's information, known as a "lead" in the industry, to defendant Infinix.   Upon information and belief, the principal of defendant RM7 Services is Joseph Leto.  Upon information and belief, the principals of defendant Infinix are Scott Offut and Corey Shader.  Upon information and belief, defendants RM7 Services and Infinix are both funded by Corey Shader, a Florida resident, and his brother Andrew Shader, also a Florida resident (collectively, the "Shaders").

23.     Upon information and belief, defendant Infinix next sells the consumer "lead" to defendant Kratos, which is an insurance agency licensed in multiple states whose principal (at least nominally) is an individual named Richard Rysick. Upon information and belief, Richard Rysick, rather than being a professional actually engaged in the business of insurance, is a fire sprinkler salesman.  Upon information and belief, defendant Kratos is also a Shader-funded enterprise. [3]  Upon information and belief, Kratos's business is actually operated by Adam Beeman ("Beeman"), a Florida resident and convicted felon. Upon information and belief, Beeman uses the credit card of defendant Beeman's Future to purchase the leads from defendant Infinix and others.

24.     Defendant Kratos next takes the contact information from the prospective consumer "lead" and contacts the consumer by and through one of its sub-agency call centers (located, upon information and belief, in New Jersey, New York, Pennsylvania, California and Florida).  Upon information and belief, among other possible products offered to the prospective consumer, defendant Kratos markets for sale in New Jersey and each of the other eleven (11) potentially affected

---

[3] Defendant Kratos, and the remaining defendants, compete with ICD in various states for the sale of lawful insurance and other products (unlike the unlawful products being marketed and sold that are the subject of this Complaint).  The millions of dollars in profits generated through the unlawful sales is allowing Defendants to realize an unfair and unlawful competitive advantage in the states where products are being sold lawfully.

jurisdictions a variety of unregulated tribal association-based health plans offered through Sovereign Nations Insurance.

25.    Upon information and belief, Kratos has access to sell the Sovereign Nation Insurance plans through its contract with defendant First Enroll.   Upon information and belief, it is defendant First Enroll which administers access to (along with handling billing collection, product distribution, and paying advanced commissions for) the plans offered by Sovereign Nations Insurance.   Upon information and belief, defendant First Enroll pays defendant Kratos and its subagencies for the sale of each Sovereign Nations Insurance plan.   Upon information and belief, defendant First Enroll also pays defendant Beeman's Future for override commissions related to the Sovereign Nations Insurance plans offered for sale by Kratos and other agents through defendant First Enroll.

26.   In the end, upon information and belief, a substantial number of consumers in New Jersey and the other affected jurisdictions who initially took to the internet in search of health plans or other insurance ended up ensnared in Defendants' unauthorized and/or illegal scheme and, beknown or unbeknownst to the consumer, purchased an unauthorized and/or illegal tribal health association-based product through Sovereign Nations Insurance.  Again, based upon information readily available on its website, Sovereign Nations Insurance's products are purportedly sold entirely outside of the regulatory scope of the New Jersey Division

of Insurance and all other state insurance regulators.  Sovereign Nations Insurance, and Defendants by actively marketing and selling its products, are operating outside of the bounds of federal and state law.

## THE MCCARRAN-FERGUSON ACT

27.    The "McCarran-Ferguson Insurance Regulation Act," commonly known as the  *McCarran-Ferguson Act* and codified at 15 U.S.C. §§1011-1015, provides that "[t]he business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business."   15 U.S.C. §1012(a).  The *McCarran-Ferguson Act* further provides that  "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance…"  15 U.S.C. §1012(b).  While the *McCarran-Ferguson Act* does not itself regulate the business insurance, it provides that no federal law shall impair any state law regulating the business of insurance unless the federal law itself specifically relates to the business of insurance.  15 U.S.C.A. §1014.  It has accordingly been settled law throughout the United States for nearly a century that the regulation of the business of insurance is a function wholly reserved for the states, unless specifically pre-empted by federal law.  No such pre-emption exists in federal law,

or the laws of any state, that exempts Native American tribes (or any tribally-chartered entity) from the scope of state insurance regulation.[4]

## NEW JERSEY LAW

28.     In response to the enactment of the *McCarran-Ferguson Act*, New Jersey enacted a series of statutes regulating the business of insurance within the state.  N.J.S.A. 17B:30-1 *et seq*.  The New Jersey Division of Insurance is the entity within the state charged with regulating, overseeing and licensing those engaged in the business of insurance in New Jersey.  In this regard, the New Jersey Division of Insurance "issues licenses to insurance companies, producers and other risk-assuming entities, reviews insurance products and rates for compliance with existing regulations, and monitors the financial solvency of licensees to ensure product availability in the marketplace." (www.state.nj.us). The New Jersey Division of Insurance is also charged with responding to consumer concerns.  *Id*.

## SOVEREIGN NATIONS INSURANCE PLANS

29.     By its own admission, Sovereign Nations Insurance is a tribally-charted "entity" that claims to operate "**both on and off Reservation**" wholly-outside the scope of any state-based insurance regulation, offering its products to "**both Native**

---

[4] Neither is it the law that Native American tribes, by virtue of their domestic dependent sovereign status, are carte blanche exempt from state-based regulation. *See Nevada v. Hicks*, 533 U.S. 353, 363 (2001)("…the Indians' right to make their own laws and be governed by them does not exclude all state regulatory authority on the reservation.").

**American and non-Indians alike**.”  (Emphasis added).  This wholly radical and unlawful scheme violates the insurance laws of New Jersey and other affected jurisdictions, as well as federal law.

30. Sovereign Nations Insurance advertises its products at www.sniprotect.com.



31. On its website, Sovereign Nations Insurance provides answers to “Frequently Asked Questions” which explain its misguided rationale for claiming to be exempt from state-based regulation both “on and off reservation” for sales of its

products to "both Native American and non-Indians alike."

([www.sniprotect.com/faqs/](http://www.sniprotect.com/faqs/)).



32.     In response to the Frequently Asked Question "What is Sovereign

Nations Health Consortium (SNHC)?", www.sniprotect.com/faqs/ explains:

> SNHC is an inter-Tribal association made up of the following federally recognized Tribes: Shivwits Band of Paiutes, Kanosh Band of Paiutes, and the Confederated Tribes of the Goshute Reservation. The Tribes of SNHC are each federally recognized, sovereign Indian Tribes listed on the Bureau of Indian Affairs Indian Entities Recognized List.

SNHC is a Tribal government instrumentality, exercising delegated authority from participating Tribes to regulate and administer Tribal health and insurance laws. SNHC regulates the health insurance services according to Tribal law for the Tribal Health Community established by the Tribal Health and Insurance Code.

SNHC owns and operates a wholly owned sovereign domestic insurance company called Sovereign Nations Insurance (SNI).

33.    In response to the Frequently Asked Question "What is Sovereign Nations Insurance (SNI)?", www.sniprotect.com/faqs/ explains:

Indian Tribes. Federally recognized Tribes have inherent sovereignty, which is the right of Tribes to make their own laws and govern themselves. The Tribes participating in SNHC have exercised that sovereignty to create and operate SNI.

**SNI engages in interstate and inter-Tribal commerce, both on and off Reservation**, with members of Tribal Health Communities (THC) established by sovereign Tribal Law. SNI is a limited liability company established under the Shivwits Band of Paiutes' Limited Liability Company Act. **SNI provides health care and insurance benefit solutions throughout the United States to all members of Tribal Health Communities, both Native American and non-Indians alike**. (Emphasis added).

34.    In response to the Frequently Asked Question "Can Non-Indians purchase an SNI insurance policy?", www.sniprotect.com/faqs/ explains:

Yes. Through the established Tribal Health and Insurance Code, anyone in the continental U.S. that agrees to follow the Code and become a member of the Native American Restoration Association (NARA) is eligible to purchase an SNI insurance policy. Programs are available for primary policyholders that are between the ages of 18-64 and their dependents.

35.     In response to the Frequently Asked Question "What kinds of policies does SNI offer?", www.sniprotect.com/faqs/ explains:

> The types of private insurance policies SNI offers are: Medical, Dental, Vision and Specified Coverage plans for critical illness and accident.

36.     In response to the Frequently Asked Question "Does an SNI Policy satisfy the Federal Mandate under ACA?", www.sniprotect.com/faqs/ explains:

> Tribal governments and Tribal organizations, like SNHC, qualify for exemptions under the Affordable Care Act (ACA). Because SNI is a 100% Tribally owned Insurance company, administered by Tribal governments that regulate and grant membership in Tribal Health Communities and the Native American Restoration Association, a policyholder can qualify for exemption from the ACA individual mandate requirements, which are not presently being enforced at the federal level. Policyholders should check with their tax advisor or attorney if they have questions.

37.     In response to the Frequently Asked Question "Is SNI subject to Federal and State regulation?", www.sniprotect.com/faqs/ explains:

> Federally recognized Tribes and economic arms of Tribes, like SNHC, are subject to federal law, but generally not state laws.
>
> Tribal governments have inherent and legally recognized sovereign authority, and as such, are not subject to general state regulations. Such standing does not suggest, however, that SNHC's purpose is to avoid regulation. To the contrary, as a 100% Tribally owned entity, SNHC and SNI have established a transparent and effective regulatory framework for matters related to accessing health care and health insurance.

16

The model Tribal Health and Insurance Code administered by SNHC contains processes and standards similar to some states but avoids the inconsistency of disparate state laws, and unpredictability of state regulatory enforcement.

38.     In response to the Frequently Asked Question "How is this legal?", www.sniprotect.com/faqs/ explains:[5]

As a duly constituted, inter-Tribal government instrumentality wholly owned by federally recognized Indian Tribes, SNHC exercises delegated authority from participating Tribes to perform essential government functions, including regulating and administering Tribal health and insurance laws. SNHC regulates health insurance services according to Tribal law for the Tribal Health Community established by the Tribal Health and Insurance Code. SNHC is in good standing with each participating Tribal government. SNHC has an EIN issued by the Internal Revenue Service, has given due notice as a Tribal entity engaged in commerce through the Department of Commerce and Corporations in Utah, and has been issued a State Entity Number. Tribal sovereignty and supremacy of federal law provide a firm legal foundation for SNHC, SNI, and NARA. Tribes have the right, through duly constituted Tribal organizations to provide access to health care and serve not just Tribal members but also non-Indians that are part of Tribal Health Community, leveraging exemptions in the ACA for Tribal governments and to provide services to eligible beneficiaries and non-beneficiaries recognized by the Indian Health Care Improvement Act and other federal laws.

Federally recognized Tribes have inherent sovereignty, which means they have the right to make their own laws and govern themselves. The Federal government has enforceable legal obligations to encourage and facilitate Tribal self-sufficiency through economic development. The

---

[5] This is a very good question, because in fact it is not legal.  The National Association of Insurance Commissioners (NAIC) has established a standing "Improper Marketing of Health Insurance Working Group," in part, to address issues raised by conduct such as that complained of in this lawsuit.

Tribes participating in SNHC have exercised that sovereignty to create and operate SNHC, SNI and NARA.

39.     Finally, in response to the Frequently Asked Question "What gives SNI the ability to market both on and off Reservation, and in every state?", www.sniprotect.com/faqs/ explains:

> SNI has the ability to market both on and off reservation because of sovereignty and because of the United States Constitution, including the interstate commerce clause and inter-Tribal commerce clause. Tribes and Tribal businesses are not legally required to only do business on their respective Reservations. Legal precedence allows Tribes to do business off reservation as well and provide services and goods to non-Tribal members. They can legally do business under the U.S. Constitution which makes inter-state commerce and inter-Tribal commerce a matter for the exclusive regulation of the federal government, instead of States.

## **DEFENDANT FIRST ENROLL'S MARKETING OF SOVEREIGN NATIONS INSURANCE PRODUCTS**

40.     Upon information and belief, and based upon the webpage access of a First Enroll agent (see screenshot below), First Enroll is marketing and selling products to consumers offered by Sovereign Nations Insurance, including in the State of New Jersey.



41.     Defendant First Enroll's product offerings contain information describing the Sovereign Nations Insurance Indemnity (and other) plans.  By way of example, below is a screenshot containing information regarding the Sovereign Nations Insurance Indemnity Plan, as well as the states in which it is purportedly being offered.



42.    The following screenshot from the First Enroll agent access page describes the pricing for consumers in New Jersey.



43.    This screenshot provides information regarding the states, including New Jersey, in which the Sovereign Nations Insurance products are available for sale.



44.    Finally, as further evidence that defendant First Enroll is actively marketing and selling Sovereign Nations Insurance products, the below screenshot is found on Sovereign Nations Insurance's own website in its claims handling brochure (https://sniclaims.com/documents/global/SNIclaims%20How%20To.pdf).



## COUNT 1
### (False Advertising Under the Lanham Act § 43(a), 15 U.S.C. §1125(a))

45.     Plaintiff adopts and incorporates the previous allegations as if fully set forth herein.

46.     Defendants have, individually and in agreement with one another, distributed in this District advertisements that contain false and/or misleading statements of fact regarding products and/or services sold by or through Defendants. These statements have the tendency to cause confusion, or to cause mistake and/or to deceive a substantial segment of Defendants' audience into believing the products purchased through them are lawful and regulatory compliant when in fact they are not.

47.     Defendants have further misrepresented the nature, characteristic and qualities of the products marketed and/or sold by them as lawful and regulatory compliant when in fact they are not.

48.     Through their unauthorized and/or illegal conduct aimed at circumventing the New Jersey Division of Insurance and other regulators, Defendants have caused, and will continue to cause, immediate and irreparable injury to ICD and other lawful actors in the form of Defendants' gaining an unfair competitive advantage, as well as causing harm to the general public, for which there is no adequate remedy at law.  As such, ICD is entitled to an injunction restraining Defendants, their agents, employees, representatives, and all persons acting in

conspiracy with them, from engaging in further acts which constitute a violation of the law and/or insurance regulation.

49.     By reason of their violation of 15 U.S.C. §1125(a), ICD is entitled to recover its damages, reasonable attorney fees and costs of this action.

## COUNT 2
### (Unfair Competition)

50.     Plaintiff adopts and incorporates the previous allegations as if fully set forth herein.

51.     Defendants have, individually and in agreement with one another, engaged in conduct that constitutes unfair competition and/or deceptive acts or practices in the business of insurance within the State of New Jersey and other jurisdictions.

52.     As a result of Defendants actions, ICD has been harmed in the form of Defendants' gaining an unfair competitive advantage in the marketplace through their unauthorized and/or unlawful conduct.

53.     By reason of their violation of New Jersey common law with respect to unfair competition, ICD is entitled to recover its damages, reasonable attorney fees and costs of this action.

## Count 3
### (Civil Conspiracy)

54.    Upon information and belief, defendants RM7 Services, Infinix and Kratos, all Shader-funded enterprises, conspired with each other and with defendant First Enroll to market and sell unlawful products through Sovereign Nations Insurance to consumers in this and other jurisdictions.

55.    As a result of this unlawful conduct, which constitutes a civil conspiracy, ICD has suffered financial injury in the form of competitors having access to millions of dollars in ill-gotten profits.  Just as importantly, the general public is harmed through the sale of unlawful products marketed and sold with the exclusive aim of circumventing lawful state regulation.

56.    As a result of Defendants' civil conspiracy, ICD is entitled to recover its damages, reasonable attorney fees and costs of this action.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

- Awarding Plaintiff general and/or compensatory damages in an amount to be determined at trial for all injuries suffered as a result of Defendants' wrongdoing;

- Awarding Plaintiffs punitive damages, as applicable;

- Enjoining Defendants from continuing any conduct which amounts to a violation of New Jersey and other applicable laws and/or regulations;

- Awarding Plaintiff prejudgment and post judgment interest at the maximum rate allowable by law;

- Awarding Plaintiff the cost of suit as incurred in this action and attorneys' fees, and;

- Awarding Plaintiff all other relief as may be appropriate, including any further and additional relief provided by 15 U.S.C. §1125, common law unfair competition and any other applicable law or regulation.

<u>**DEMAND FOR JURY TRIAL**</u>

ICD demands a trial by jury on all issues so triable.

Dated: May 31, 2022                    Respectfully submitted,

<u>s/ *Robert A. Magnanini*</u>
Robert A. Magnanini, Esq.
STONE & MAGNANINI LLP
400 Connell Drive, Suite 6200
Berkeley Heights, NJ 07922
Tel: (973) 218-1111
Fax: (973) 218-1106
RMagnanini@stonemagnalaw.com

Ryan Leonard,
Heidi Long,
Travis W. Brown,
Jennifer A. Tupps
(*PRO HAC VICE* MOTIONS TO BE FILED)
Edinger, Leonard & Blakley, PLLC

6301 N. Western Avenue, Suite 250
Oklahoma City, OK 73118
Phone: (405) 702-9900
Fax:     (405) 605-8381
Email:   rleonard@elbattorneys.com
            hlong@elbattorneys.com
            tbrown@elbattorneys.com
            jtupps@elbattorneys.com

*ATTORNEYS FOR PLAINTIFF,*
*HEALTH OPTION ONE, LLC*